United States District Court
for the
Southern District of Florida

| Julia Damaris Toruno Pineda, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-20544-Civ-Scola |
| | ) | |
| Oceania Cruises, Inc. and Nautica | ) | |
| Acquisition, LLC, Defendants. | ) | |

## **Order Remanding Case**

Plaintiff Julia Damaris Toruno Pineda, while a cabin stewardess aboard the cruise-ship *Nautica* and in international waters, claims to have been seriously injured when she slipped from an allegedly defective ladder, descending from her bunk. (Compl., ECF No. 4-1, 3, ¶¶ 15, 27.) Toruno Pineda initially filed suit, in state court under the savings to suitors clause of 28 U.S.C. § 1333(1), against Defendants Nautica Acquisition, LLC, the owner of the *Nautica*, and Oceania Cruises, Inc., whom she alleges was her "borrowing employer." (*Id.* at ¶¶ 7, 10.) The Defendants, in turn, filed a notice of removal in this Court, submitting that removal is proper because Toruno Pineda's claims are subject to an arbitration clause that falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. (Def.'s Not. of Removal, ECF No. 1.) Since removing the case, the Defendants have filed a motion asking the Court to, on the one hand, dismiss the case on substantive grounds, and to compel the parties to arbitration, on the other. (Defs.' Mot., ECF No. 4.) Toruno Pineda responded, arguing that dismissal would be improper and that her case should be remanded to state court because her claims are not subject to arbitration. (Pl.'s Resp. and Mot., ECF No. 10.) Because the Court finds the arbitration clause relied upon by the Defendants inapplicable to Toruno Pineda's claims, it concludes that subject-matter jurisdiction is lacking and therefore remands this case back to state court.

1. **Factual Background and Procedural Framework**

Following her fall in August 2013, Toruno Pineda was first treated onboard and soon thereafter taken ashore for surgery. (Compl. at ¶ 28.) She later received follow-up medical care upon her return to her home country of

Honduras. (*Id.* at ¶ 29.) However, the doctors there ended up removing the wrong screws from her leg, ultimately leaving behind "a protruding and painful screw which continues to require surgical removal." (*Id.*) Due to her injuries, Toruno Pineda continues to suffer not only leg pain from the screws, but also ankle and lower-back pain as well. (*Id.* at ¶ 31.) In her complaint, which she originally filed in state court in August 2016, Toruno Pineda asserts general maritime claims for inadequate medical care; failure to provide maintenance and cure; and unseaworthiness, against both Nautica and against Oceania. (*Id.* at ¶¶ 7, 10, 35–70.)

The parties do not dispute that Toruno Pineda entered into an employment agreement, the "Crew Agreement," with staffing company and non-party International Cruise Services, Inc. (Ex. B-1, ECF No. 4-3.) Toruno Pineda, however, contends that, after being hired by ICS, and once she was on board the *Nautica*, she was under the exclusive direction and control of Oceania and became Oceania's borrowed employee. (Compl. at ¶¶ 6, 13.) Nonetheless, the Crew Agreement entered into by Toruno Pineda and ICS incorporates by reference a collective bargaining agreement ("Collective Agreement," Ex. B-2, ECF No. 4-4) between ICS and the Union representing personnel like Toruno Pineda. (Defs.' Not. at ¶ 6.) The Collective Agreement includes a broad arbitration agreement:

> Grievances and disputes arising on the [relevant] vessel[] or in connection with this Agreement which cannot be resolved onboard or between the parties shall be referred to arbitration . . . .
>
> . . . .
>
> Where a seafarer raises a grievance after leaving the vessel, the grievance shall be referred to the Unions at Rome and the Company at Miami, Florida and representatives of the parties shall promptly confer to resolve the grievance or refer it to arbitration.

(Coll. Agmt. at Art. 26.) According to the Defendants, attached to the Collective Agreement is a "Special Agreement for Cruise Vessels." (Ex. B-2, ECF No. 4-4, 27–28.) By its terms, this Special Agreement is between ICS "in respect of the MARSHALL ISLANDS flag ship NAUTICA" and the Union. (*Id.* at 4-4, 27.) ICS is referred to in the Special Agreement as the "Company." The agreement represents that "the Company is the owner/agent/operator of the owner of the [*Nautica*]." (*Id.*) Under this agreement, ICS, and ICS alone, agrees "to employ each Seafarer in accordance with the [Collective Agreement]." The language near the signature line for ICS reads as follows: "Signed by: [illegible signature] the Company / on behalf of the Company who is duly authorised [sic] by the

owner of the Ship to sign on its behalf." (*Id.* at 28.) Below the signature line, Defendant Nautica Acquisition, LLC is listed as the owner of the vessel *Nautica*.

Based on these three agreements and the arbitration clause therein, Nautica and Oceania removed this case, five months after its filing, submitting that Toruno Pineda's case falls under United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The Convention is a "multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration awards made in other contracting states." *Thomas v. Carnival Corp.,* 573 F.3d 1113, 1116 (11th Cir.2009). The Convention is enforced through the Federal Arbitration Act. 9 U.S.C. § 201, et seq. In accordance with the Convention, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, . . . the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States." 9 U.S.C. § 205.

The Eleventh Circuit has described the following as the "four jurisdictional prerequisites" that must be met under the Convention: (1) there is an agreement in writing to arbitrate the dispute within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294, 1295 n. 7 (11th Cir. 2005). Where these jurisdictional requirements are not met, removal is improper. *See Wexler v. Solemates Marine, Ltd.*, No. 16-CV-62704, 2017 WL 979212, at *3 (S.D. Fla. Mar. 14, 2017) (Bloom, J.) ("If . . . the arbitration clause . . . is not applicable to some or all of the claims at issue, then the Court does not have subject matter jurisdiction of those claims and those claims must be remanded.") Conversely, where these requirements are met, a "court must enforce [the] agreement to arbitrate under the Convention." *See Ruiz v. Carnival Corp.,* 754 F. Supp. 2d 1328, 1330 (S.D. Fla. 2010) (Cooke, J.).

Because the Court ultimately finds, as set forth below, that Toruno Pineda's claims against Nautica and Oceania, as set forth in her complaint, do not "relate to an arbitration agreement . . . falling under the Convention," it finds subject-matter jurisdiction lacking and removal, therefore, to have been improper.

## 2. Discussion

The parties' dispute about whether Toruno Pineda's claims relate to an arbitration falling under the Convention, at its core, centers on whether Toruno Pineda's claims against Nautica and Oceania are subject to the arbitration clause set forth in the Collective Agreement. The parties' disagreement about whether there is in fact an agreement to arbitrate the dispute hinges on whether either Nautica or Oceania, as nonsignatories of any of the agreements here at issue, can force Toruno Pineda to arbitrate her claims. The Defendants argue that under principles of equitable estoppel, as well as the agency relationship between ICS and Nautica, in addition to the parent-subsidiary relationship between Nautica and Oceania, they may invoke the arbitration clause despite being nonsignatories to the contract. The Court, however, finds these principles inapplicable in this case and therefore finds that there is indeed no agreement to arbitrate between Toruno Pineda and either Nautica or Oceania.

### A. Equitable Estoppel

As set forth by the Eleventh Circuit, equitable estoppel is available to allow a nonsignatory to compel arbitration in two circumstances: (1) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory"; and (2) "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (quotations and alterations omitted). Neither condition is satisfied here.

To begin with, none of Toruno Pineda's claims either directly or even indirectly invokes the terms of any of the relevant agreements. The Defendants fail to support their supposition that Toruno Pineda's claims against Nautica and Oceania "are intertwined with [her] Employment Contract with ICS and inherently inseparable." (Def.'s Mot. at 15.) While Toruno Pineda certainly acknowledges in her complaint that ICS initially hired her to work on board the *Nautica*, she maintains that once she was actually on board she became exclusively Oceania's borrowed employee. (Compl. at ¶¶ 6, 7, 16.) Her complaint pointedly alleges that she "was never directly supervised by any employee of International Cruise Services." (*Id.* at ¶ 13.) Three of her counts are lodged against Oceania, as Toruno Pineda's borrowed employer and the other

three are directed against Nautica, as the owner of the ship. Ultimately, Toruno Pineda has set forth her claims against the nonsignatory Defendants in such a way that none of them rely on the written agreements at issue in this case. *See Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 48 (1st Cir. 2008) (compelling arbitration where plaintiff signatory's claims against nonsignatory defendants all derived from benefits the plaintiff alleged were due under its agreement with signatory). Although claims of this type are addressed in the Collective Agreement, which by it terms, the Defendants point out, requires the signatory employer to provide medical care, it does not necessarily follow, as the Defendants insist, that Toruno Pineda's claims must therefore exclusively spring from the agreement. Toruno Pineda's complaint is clear: she bases her claim of Defendants' liability on: Oceania's status as her borrowing employer (*e.g.*, Compl. at ¶¶ 7, 8, 23, 24, 32, 33, 36, 41); and Nautica's status as the vessel owner (*e.g.*, *id.* at ¶¶ 10, 25, 26, 32, 33, 34, 54, 59, 68). Toruno Pineda repeatedly emphasizes: her claims arise under general maritime law. Nothing in her complaint "makes reference to" or "presumes the existence of" the Collective Agreement. *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2014) (Scola, J.) (noting that "arbitration is appropriate when the signatory's claim against a non-signatory 'makes reference to' or 'presumes the existence of' the agreement") (quoting *MS Dealer,* 177 F.3d at 947).

Next, none of Toruno Pineda's allegations implicates "substantially interdependent and concerted misconduct" by both nonsignatories as well as signatories. Unquestionably, Toruno Pineda does not allege *any* misconduct against ICS, the signatory, at all. Instead, Toruno Pineda's claims all assert liability that is detached from and independent of any relationship or connection either Defendant has with ICS. While the Defendants complain that Toruno Pineda should be "estopped from avoiding arbitration" by selectively filing suit only against nonsignatories, they have provided no support to buttress their position. In fact, in each of the cases relied upon by the Defendants, the plaintiffs all either included a signatory, in addition to nonsignatories, as defendants or, at a minimum, alleged that the signatories were co-conspirators in the alleged wrongdoing. *E.g.*, *MS Dealer*, 177 F.3d at 945 (plaintiff filed suit against signatory car seller as well as nonsignatory car-dealership operator and credit corporation, alleging all three colluded to defraud her regarding her car's service contract); *Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (seaman sued both cruise-operator signatory as well as cruise-line nonsignatory for claims related to the same injury); *Gunson,* 43 F. Supp. 3d at 1403 (finding that, although

signatories were not named as defendants, the allegations of the complaint "establish[ed] concerted misconduct" among the nonsignatory defendants and non-party signatories); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 374 (4th Cir. 2012) (seaman's claims against signatory ship employer and nonsignatory charterer and ship owner/operator all arose out of the same occurrence and incident); *Khan v. Parsons Glob. Servs., Ltd.*, 480 F. Supp. 2d 327, 341 (D.D.C. 2007), *rev'd on other grounds*, 521 F.3d 421 (D.C. Cir. 2008) (signatory employee and nonsignatory employee's wife's claims against signatory employer and nonsignatory defendants all arose out of employment agreement).

In short, this is not a case where the Plaintiff is "trying to have her cake and eat it too" by "using certain provisions of the contract to [her] benefit to help establish [her] claim while also attempting to avoid the burdens of the other provisions." *Gunson*, 43 F. Supp. 3d at 1401. None of the Defendants' proffered principles of equitable estoppel allow the Court to find an agreement between Toruno Pineda and the nonsignatory Defendants to arbitrate Toruno Pineda's claims against either Oceania or Nautica.

### B. Agency

The Defendants also argue that Nautica should be considered a signatory to the agreement based on ICS's status as agent for Nautica. (Defs.' Mot. at 9.) While it is certainly true that an agent has the authority to bind a principal where the principal has granted the agent the power to do so, the Court does not find that ICS actually did so in this case. *See United States v. Schaltenbrand*, 930 F.2d 1554, 1560 (11th Cir. 1991) ("An agent has 'actual' authority to bind the principal where the principal has specifically granted the agent the power to do so.")

Toruno Pineda entered into the Crew Agreement with ICS. That agreement incorporates by reference the Collective Agreement which contains the arbitration clause at issue in this case. The Collective Agreement itself was entered into by ICS and the Union. Attached to the Collective Agreement is the Special Agreement, in which Defendant Nautica is mentioned for the first time. Defendant Nautica is identified in the Special Agreement as the owner of the ship *Nautica*. One of the "whereas" clauses in the Special Agreement identifies ICS as "the owner/agent/operator of the owner of the Ship." (ECF No. 4-4, 27.) While this clause could arguably establish an agency relationship between ICS and Defendant Nautica, it doesn't necessarily follow, simply from this provision, that ICS in fact signed the Special Agreement on Nautica's behalf.

Likewise, the language set forth in the area of the contract where ICS's representative signed the Special Agreement is similarly unhelpful in establishing that ICS actually signed the agreement on Nautica's behalf. The signature line for ICS reads as follows: "Signed by: [illegible signature] the Company / on behalf of the Company who is duly authorised [sic] by the owner of the Ship to sign on its behalf." (*Id.* at 28.) The "Company" is, earlier in the agreement, defined only as ICS. The signature then, by the plain terms of the agreement, is provided only on ICS's behalf. While it is mentioned that ICS is authorized to sign on behalf of Nautica, nowhere in the document is there an indication that ICS is actually signing on Nautica's behalf. Further, all of the binding terms reference obligations that either the Union or ICS, not Nautica, is specifically taking on, including ICS's agreement to "employ each Seafarer in accordance with the . . . terms of the . . . Collective Bargaining Agreement." (*Id.* at 27.) The Defendants are correct: an agent may indeed bind its principal. But just because an agent *can* do such a thing does not mean that it *did* do such a thing. Nowhere does the Special Agreement actually obligate Nautica to any of the contract's terms. In short, the Defendants' declaration that "ICS executed the contract as an agent of NAUTICA which owns the *M/S Nautica*" (Defs.' Reply, ECF No. 12, 6) is unsupported.

Another exception to the general rule requiring a written arbitration agreement between the parties "exists when, 'under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'" *MS Dealer*, 177 F.3d at 947 (quoting *Boyd v. Homes of Legend, Inc.,* 981 F. Supp. 1423, 1432 (M.D. Ala.1997)). Even if the Court assumes that this concept is applicable when the plaintiff sues only nonsignatory defendants, and no signatory defendants, the Defendants have failed to set forth any support to sustain a finding that the relationship between ICS and either Nautica or Oceania is "sufficiently close" in this case.

Lastly, Oceania claims the right to compel arbitration based on its status as Nautica's parent company. Because the Court finds the arbitration clause is inapplicable to Toruno Pineda's claims against Nautica, Oceania's attempt to invoke arbitration, premised on Nautica's ability to do so, fails as well.

### 3. Conclusion

Because the arbitration clause at issue in this case is inapplicable to Toruno Pineda's claims against the Defendants, the Court lacks subject matter

over this case under the Convention. The Court thus **grants** Toruno Pineda's motion to remand this case back to state court (**ECF No. 10**). Additionally, because the court lacks subject-matter jurisdiction over this case, it declines to consider the Defendants' motion to dismiss and to compel arbitration. *See Wexler*, No. 16-CV-62704, 2017 WL 979212, at *5 ("Without subject matter jurisdiction over Plaintiff's claims against [the nonsignatory defendant] under the Convention, the Court is precluded from considering the . . . Motion to Dismiss.").

  This case is accordingly **remanded** to state court. The Clerk is directed to **close** this case and take all necessary steps to ensure the prompt remand of this matter and the transfer of this file back to the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County. All pending motions are **denied as moot**.

  **Done and ordered**, at Miami, Florida, on September 27, 2017.

Robert N. Scola, Jr.
United States District Judge